# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:19-cv-292-MOC
### (3:16-cr-74-MOC-DSC-2)

| | | |
|---|---|---|
| **JERITON LAVAR CURRY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1), Motions to Amend, (Doc. No. 5, 11), and Motion

to Appoint Counsel, (Doc. No. 4).

## I.   BACKGROUND

Petitioner was indicted in connection with the armed robbery of a Kay Jewelers assistant

manager as he dropped off the day's deposit at a bank drive-thru. The charges pertaining to

Petitioner are: Count (1), conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951); Count (2)

Hobbs Act robbery (18 U.S.C. § 1951 and 2); and Count (3), brandishing a firearm during and in

relation to a crime of violence (18 U.S.C. § 924(c) and (2)). (3:16-cr-74, Doc. No. 3). Petitioner

pled guilty to Count (1) in exchange for the Government's dismissal of the remaining counts. (Id.,

Doc. No. 125). In a written Plea Agreement, Petitioner admitted that he is "in fact guilty as charged

in Count One (1)." (Id., Doc. No. 125 at 1). The Agreement states that "defendant's failure to fully

comply with any provision of the Plea Agreement, attempt to withdraw the guilty plea or violation

of any federal, state or local law, or any order of any court, including any condition of pre-trial or

1

pre-sentence, or post-sentence release, is a breach of the Plea Agreement," which would absolve the United States of its obligations under the Plea Agreement. (Id., Doc. No. 125 at 1).

The Plea Agreement sets forth the statutory penalty of a maximum of 20 years' imprisonment, a $250,000 fine, or both, and not more than three years of supervised release. (Id., Doc. No. 125 at 2). The Plea Agreement further acknowledges that the advisory guidelines apply, that the sentence has not yet been determined, that any estimate of the likely sentence is a prediction rather than a promise, the Court has the final discretion to impose any sentence up to the statutory maximum, and the Court is not bound by recommendations or agreements by the United States and that Petitioner cannot withdraw his plea as the result of the sentence imposed. (Id., Doc. No. 125 at 2).

In the Plea Agreement, the parties agreed to jointly recommend with regards to the U.S. Sentencing Guidelines:

a. The United States agrees that the defendant's entry of the plea is timely for purposes of U.S.S.G. § 3E1.1(b).

b. Notwithstanding any other recommendation herein, **if the Court determines from the defendant's criminal history that U.S.S.G. § 4B1.1 (Career Offender)** or U.S.S.G. § 4B1.4 (Armed Career Criminal) **applies, such provision may be used in determining the sentence**.

c. The parties agree that the **defendant should receive a six (6)-level enhancement to his offense level pursuant to U.S.S.G. § 2B3.1(b)(2)(B)**.

d. The parties agree that the **defendant should _not_ receive an increase or decrease to his offense level pursuant to U.S.S.G. §§ 3B1.1 or 3B1.2**.[1]

e. The parties agree that **either party may seek a departure or variance** from the "applicable guideline range" (U.S.S.G. § 5C1.1).

f. The United States will inform the Court and the probation office of all facts pertinent to the sentencing process and will present any evidence requested by the Court.

---

[1] These sections address aggravating and mitigating role.

(Id., Doc. No. 125 at 2) (emphasis added).

By entering into the Plea Agreement, Petitioner stipulated to the existence of a factual basis and agreed that "such Factual Basis may be used by the Court and the United States Probation Office without objection by the defendant to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a), unless the Factual Basis itself notes that the defendant's right to object to a particular fact(s) was explicitly reserved." (Id., Doc. No. 125 at 4). Petitioner acknowledged the rights he waived by pleading guilty including the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (Id., Doc. No. 125 at 4). The Plea Agreement states that Petitioner discussed his appellate and post-conviction rights with his attorney and agreed to waive all such rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id., Doc. No. 125 at 5).

A written Factual Basis sets forth the circumstances surrounding the robbery, including the fact that Petitioner's girlfriend was an employee of the Kay Jewelers store, that Petitioner instructed his girlfriend not to accompany the assistant manager to the bank for the the nightly deposit as usual on the date of the robbery, Petitioner arranged the robbery with co-defendant Reginald Tate,[2] Tate approached the assistant manager's vehicle at a bank drive-thru night deposit drop and demanded money while pointing a handgun at him, and Petitioner presented a share of the proceeds from the Kay Jewelers robbery to his girlfriend several days later. (Id., Doc. No. 126). The Factual Basis provides that "[t]he parties' agreement does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the

---

[2] It is undisputed that Tate is Petitioner's brother. See (Id., Doc. No. 293 at 69).

parties have agreed not to object and which are relevant to the Court's guideline computations, to 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision." (Id., Doc. No. 126 at 1).

A Rule 11 hearing came before Magistrate Judge Cayer on August 4, 2016. Judge Cayer accepted Petitioner's plea after conducting a thorough colloquy on the plea's knowing and voluntary nature. See (Id., Doc. Nos. 128, 200). Petitioner stated that he wanted the Court to accept his guilty plea to Count (1) after consulting with his attorney, that he understood that the charge carries a maximum penalty of 20 years' imprisonment, that he spoke to counsel about how the U.S. Sentencing Guidelines might apply to his case, that the Court would not be able to determine the applicable sentencing guidelines range until after the Presentence Investigation Report ("PSR") has been prepared, that he may receive a sentence that is either higher or lower than the guidelines, and that he will be bound by his plea agreement is more severe than he expected or if the Court does not accept the Government's sentencing recommendation. (Id., Doc. No. 200 at 2-6). Petitioner specifically stated that he understood the parties' agreements with regards to sentencing recommendations. (Id., Doc. No. 200 at 8). He acknowledged the rights he was waiving by pleading guilty. (Id., Doc. No. 200 at 6-7).

The prosecutor stated the terms of the Plea Agreement in open court, including the parties' joint recommendations about the Sentencing Guidelines. (Id., Doc. No. 200 at 8). The prosecutor noted that Petitioner knowingly and expressly waived any right to withdraw his guilty plea after it was accepted as well as his appellate and post-conviction rights except for claims of ineffective assistance of counsel or claims of prosecutorial misconduct. (Id., Doc. No. 200 at 9).

The Court then confirmed Petitioner's understanding of the Plea Agreement's terms as follows:

> THE COURT: Do you understand those to be the terms of your plea agreement and do you agree with those terms?

THE DEFENDANT: Yes.

THE COURT: Has the right to appeal your conviction and sentence been expressly waived in this plea agreement?

THE DEFENDANT: Yes.

THE COURT: Has the right to challenge your conviction and sentence in a post-conviction proceeding also been waived in the plea agreement?

(Counsel and defendant conferred.)

THE DEFENDANT: Yes.

(Id., Doc. No. 200 at 10).

Petitioner stated that he read, understood, and agreed with the Factual Basis, that the plea was not the result of threats, intimidation, or force, and that he was not made any promises of leniency or a light sentence to induce him to plead guilty other than the terms of the Plea Agreement. (Id., Doc. No. 200 at 10).

At the end of the hearing, the following transpired:

THE COURT: Have you had enough time to discuss with your attorney any possible defenses you may have to this charge?

THE DEFENDANT: No.

THE COURT: Well, that's a problem, sir, because I'm not going to be able to accept your plea if you need more time to talk to your attorney about any defenses you may have. And I'm not telling you how to answer the question. I'm just saying that that's a serious issue.

(Counsel and defendant conferred.)

THE DEFENDANT: Yes.

THE COURT: Well, let me rephrase the question, sir. What that question is asking you about is, have you talked to your lawyer about whether you could raise any defenses to this charge, whether you could present any evidence that shows that you're not guilty, whether you could identify any witnesses that would be helpful

to you if you went to trial? Have you and your attorney talked about any evidence that may be helpful to you if you wanted to plead not guilty and go to trial?

(No response.)

THE COURT: You're saying no. All right. Well, I'm going to have to suspend it then, Ms. Okwara, and if you wanted to put it back on at another time, that's fine.

MS. OKWARA: Your Honor, may I have a minute, please?

THE COURT: Yes.

(Counsel and defendant conferred.)

MS. OKWARA: Your Honor, could you ask that again, please.

THE COURT: Well, I'm going to repeat the question to you, sir, but then I want you to tell me what your understanding is of what this question means.

The question is, have you had enough time to discuss with your attorney any possible defenses you may have to this charge?

THE DEFENDANT: Yes.

THE COURT: Now, what do you understanding me to be asking you there?

THE DEFENDANT: I understand that if I didn't plead guilty, it could be serious. I could go to trial or more charges can be brought upon me and I can lose at trial.

THE COURT: And that – that may be true, but this is talking about defenses. This is talking about have you and your lawyer talked about any evidence that might be helpful to you, that might show that you're not guilty? Have you talked about witnesses that might be able to testify in your behalf if you went to trial and you tried to convince a jury that you were not guilty?

THE DEFENDANT: Oh, yes. Yes.

THE COURT: Do you have any question about what it is that I'm asking you?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with the services of your attorney in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything that you would like to say at this time about the services of your attorney?

THE DEFENDANT: No, sir.

THE COURT: Have you heard and understood all parts of this proceeding?

THE DEFENDANT: Yes.

THE COURT: And do you still wish to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions or statements that you'd like to make at this time?

THE DEFENDANT: No, sir.

THE COURT: Is there anything in these questions that I've asked you that you don't understand?

THE DEFENDANT: No, sir.

THE COURT: Ms. Okwara, have you reviewed each of the terms of the plea agreement with him and are you satisfied he understands those terms?

MS. OKWARA: I have, Your Honor, and I'm satisfied he understands the terms.

(Id., Doc. No. 200 at 11-13).

On August 26, 2016, Petitioner's attorney, Ms. Okwara, filed a Motion for Inquiry as to Status of Counsel. (Id., Doc. No. 145). Ms. Okwara explained that Petitioner failed to fill out and return the forms that counsel provided him for preparation of the PSR and, when counsel went to visit Petitioner at the jail on August 24 and 25, 2016, he refused to meet with her. (Id., Doc. No. 145 at 2).

The matter came before Judge Cayer on September 7, 2016, at which time Ms. Okwara set forth the numerous occasions on which she visited Petitioner in jail to discuss his case. (Id., Doc. No. 206 at 2-3). This included a visit on August 24 at which time jail employees said that Petitioner

was refusing to see her. (Id., Doc. No. 206 at 3). She returned to the jail the following day. Petitioner agreed to see her but told her that he did not want to meet with her about the PSR forms, which prompted her to file the Motion of Inquiry with the Court. (Id., Doc. No. 206 at 3). Petitioner did not dispute counsel's representations about the visits, but told the Court that he was dissatisfied with her trial preparation, that she pressured him to plead guilty, failed to adequately address discovery with him, that the prosecution was vindictive, and that he wanted a new lawyer. (Id., Doc. No. 206 at 5-9). Counsel disputed Petitioner's allegations about trial preparation and explained that Petitioner was upset about the implications of his criminal history over which counsel had no control. (Id., Doc. No. 206 at 10-12). Judge Cayer allowed Ms. Okwara to withdraw and Randolph Marshall Lee was appointed to represent Petitioner. (Id., Doc. No. 157).

The Presentence Investigation Report ("PSR") calculated the base offense level as 20 because the offense violated 18 U.S.C. § 1951 pursuant to U.S. Sentencing Guidelines § 2B3.1. (Id., Doc. No. 175 at ¶ 16). Six levels were added because a firearm was otherwise used in this offense pursuant to § 2B3.1(b)(2)(B). (Id., Doc. No. 175 at ¶ 17). The adjusted offense level subtotal was therefore 26. (Id., Doc. No. 175 at ¶ 21). However, Petitioner qualifies as a career offender pursuant to § 4B1.1(b) because Petitioner was at least 18 years old at the time of the offense, the instant offense is a felony crime of violence or controlled substance offense, and Petitioner had at least two prior felony convictions for either a crime of violence or controlled substance offense (possession with intent to sell and deliver a counterfeit controlled substance 05CRS52229 and possession with intent to sell and deliver cocaine 07CRS58672, sale of a schedule II controlled substance 07CRS58676, and possession with intent to sell and distribute cocaine 10CRS50193). (Id., Doc. No. 175 at ¶ 22). The offense level is therefore 32. (Id., Doc. No. 175 at ¶ 22). Petitioner received no reduction in the offense level for acceptance of

responsibility, resulting in a total offense level of 32. (Id., Doc. No. 175 at ¶¶ 23-24). Petitioner had a criminal history subtotal of 17 which establishes a criminal history category of VI, and further, the criminal history category for career offenders is VI. (Id., Doc. No. 175 at ¶¶ 47-49). The resulting advisory guidelines range was between 210 and 240[3] months' imprisonment followed by up to three years of supervised release. (Id., Doc. No. 175 at ¶¶ 106, 108).

Shortly after the PSR was prepared, Mr. Lee moved to withdraw as counsel because Petitioner wanted to withdraw his guilty plea, which would be better handled by an attorney outside the Western District. (Id., Doc. No. 179). Judge Cayer granted the Motion on November 14, 2016, and Roderick Wright, Jr., was appointed to represent Petitioner. (Id., Doc. No. 205).

Mr. Wright filed a Motion to Withdraw Plea on Petitioner's behalf on February 13, 2017. (Id., Doc. No. 209). Petitioner argued that his guilty plea was not knowing or voluntary because his mind was affected by antidepressant medication, he did not have the effective assistance of counsel, and that the prosecution improperly threatened him. The Court reviewed the record, Petitioner's allegations, and the applicable factors.[4] The Court concluded that two factors favored withdrawal but that four factors disfavored withdrawal, and it denied the Motion. United States v. Curry, 2017 WL 1044961 (W.D.N.C. March 17, 2017).

Mr. Wright then filed a Motion for Inquiry into Counsel, (Id., Doc. No. 220), noting that Petitioner had filed a *pro se* document indicating he was dissatisfied with counsel and that Petitioner had instructed counsel at a jail meeting to move to withdraw from the representation. A hearing on the Motion came before Magistrate Judge Cayer at which time the Motion was denied because Petitioner's complaints did not establish good cause for the Court to appoint new counsel,

---

[3] The range was 210 to 262 months' imprisonment but the statutory maximum for the offense is 20 years so the guideline range is 210 to 240 months' imprisonment. (Id., Doc. No. 175 at ¶ 106).
[4] See United States v. Moore, 931 F.2d 245 (4th Cir. 1991).

and the Court was not inclined to appoint a fourth lawyer to represent him on the eve of sentencing. The Court also determined that Petitioner was not seeking to proceed *pro se* and that Mr. Wright should remain as appointed counsel for sentencing. (<u>Id.</u>, Doc. No. 222). Reconsideration was denied. <u>See</u> (<u>Id.</u>, Doc. No. 225).

Mr. Wright filed a second Notice of Inquiry on July 25, 2017, because Petitioner indicated that he wanted to represent himself at sentencing. (<u>Id.</u>, Doc. Nos. 259). Judge Cayer denied the Motion at a hearing on July 31, 2017. <u>See</u> (<u>Id.</u>, Doc. No. 260). Petitioner continued to file *pro se* Motions seeking replacement counsel and to withdraw his plea, which were denied. <u>See</u> <u>also</u> (<u>Id.</u>, Doc. Nos. 261, 293). The Court did, however, continue sentencing to allow time for examination of Petitioner's mental status at the time of the Rule 11 hearing. <u>See</u> (<u>Id.</u>, Doc. No. 237, 241).

The sentencing hearing came before the Court on August 24, 2017. (<u>Id.</u>, Doc. No. 293). The Court addressed Petitioner's request for a competency examination, the results of which were not brought before the Court, and denied Petitioner's requests to withdraw his plea and for an evidentiary hearing. (<u>Id.</u>, Doc. No. 293 at 2-3). Petitioner told the Court that he did not remember too much from his plea hearing, even after the Court read the plea colloquy transcript aloud. (<u>Id.</u>, Doc. No. 293 at 5-13). Petitioner claimed that the only things he remembered were "ridiculous" emails from the Government and counsel's failure to prepare for trial. (<u>Id.</u>, Doc. No. 293 at 13). He claimed that he did not lie at the Rule 11 hearing but was "coerced" because of the quick four-day period that he had to decide whether to accept the plea deal. (<u>Id.</u>, Doc. No. 293 at 14). Petitioner finally admitted that he was in the courtroom for the Rule 11 hearing, that he heard the conditions of the plea being stated, and that he signed the Plea Agreement, that he has a copy of the Factual Basis, and that he signed a copy of the Rule 11 transcript. (<u>Id.</u>, Doc. No. 293 at 17, 24). However, Petitioner claimed that he responded "yes" during the Rule 11 hearing on instructions of his lawyer

and that he did not understand the "fundamentals" of the discussion. (Id., Doc. No. 293 at 20). The Court noted that Petitioner was not confused or upset until after he received the PSR. (Id., Doc. No. 293 at 22). Petitioner then argued that the plea was the product of "vindictive letters" and "threats" from the U.S. Attorney's Office, *i.e.*, indicating a deadline for the plea and that the Government would seek a superseding indictment with additional charges if Petitioner declined the guilty plea. (Id., Doc. No. 293 at 25-26). The Court found, after going through the entire plea transcript with Petitioner, reviewing the documents including the stipulated Factual Basis, and having Petitioner appear before him, that the plea was knowing and voluntary and accepted Petitioner's guilty plea. (Id., Doc. No. 293 at 30).

Petitioner admitted that he read the PSR, understood it, and discussed it with counsel. (Id., Doc. No. 293 at 31). The parties agreed that the 2016 guidelines should apply because they were recently amended following Beckles v. United States, 137 S.Ct. 886, 894 (2017),[5] and were more favorable to Petitioner than the 2015 guidelines that were in effect at the time of the offense. (Id., Doc. No. 293 at 32, 36). Counsel objected to Petitioner's career offender status under the 2015 guidelines and argued that conspiracy to commit Hobbs Act robbery is not a crime of violence for purposes of the career offender enhancement. (Id., Doc. No. 293 at 32). The Government argued that conspiracy to commit Hobbs Act robbery is a predicate for purposes of the career offender enhancement under the amended 2016 guidelines, but that Petitioner's guideline range of 210 to 240 months' imprisonment is the same under both versions of the guidelines. (Id., Doc. No. 293 at 36-38). The court found that the armed robbery at issue was clearly a violent crime under the guidelines and overruled Petitioner's objection to the career offender enhancement. (Id., Doc. No. 293 at 44-46). Petitioner also argued that the career offender predicate addressed in ¶ 40 of the

---

[5] Beckles holds that due process vagueness challenges do not apply to the advisory sentencing guidelines.

PSR had been vacated, that the conviction in ¶ 43 was inaccurate, and that the conviction in ¶ 46 was only punished by a fine and not imprisonment. (Id., Doc. No. 293 at 80-81). The Court found that these reductions would result in 13 criminal history points rather than 17, which would not affect the criminal history category of VI. (Id., Doc. No. 293 at 82-83). Counsel objected to the six-level firearm enhancement but noted that the parties stipulated in the Plea Agreement that the six-level enhancement would apply. (Id., Doc. No. 293 at 51). Counsel argued that the Rule 11 transcript is contradictory with the Plea Agreement insofar as the prosecutor said that no other enhancements would apply, but the Plea Agreement calls for a six-level firearm enhancement, and there was not dispute that Petitioner was not at the scene of the robbery and nothing indicates that he knew or could have foreseen that his co-defendant would be in possession of a firearm. (Id., Doc. No. 293 at 52). The Court reviewed the Rule 11 hearing transcript and found that there was no ambiguity. (Id., Doc. No. 293 at 54-55). Petitioner also objected to not receiving a reduction for acceptance of responsibility, which the Court overruled because Petitioner attempted to withdraw his plea and refused to admit his wrongdoing. (Id., Doc. No. 293 at 76-77).

Defense counsel requested a below-guidelines sentence of 151 months' imprisonment. (Id., Doc. No. 293 at 64). The Government requested a sentence of 216 months' imprisonment at the low end of the guidelines. (Id., Doc. No. 293 at 65).

The Court found that the 2016 guidelines apply and overruled Petitioner's objections, but found that a variance to the offense level of 29 and criminal history category of VI was appropriate, which resulted in an advisory guideline range of 151 to 188 months' imprisonment. (Id., Doc. No. 293 at 56). This was based on consideration of the factors in 18 U.S.C. § 3553(a) including Petitioner's history and characteristics, to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public, and to avoid unwarranted sentencing disparity among Petitioner

and his co-defendants. (Id., Doc. No. 293 at 85-86); (Id., Doc. No. 294). The Court sentenced Petitioner at the bottom of the adjusted guidelines to 151 months' imprisonment followed by three years of supervised release. (Id., Doc. No. 293 at 86-87). The Court issued the Judgment on September 1, 2017. (Id., Doc. Nos. 268, 293).

A new lawyer was appointed to represent Petitioner on direct appeal and filed a memorandum brief pursuant to Anders v. California, 386 U.S. 738 (1967). Petitioner filed several *pro se* briefs that were consolidated into the following issues: (1) vindictive prosecution; (2) abuse of discretion in denying Petitioner's motion to withdraw his guilty plea; (3) erroneous application of the career offender enhancement to his sentencing guidelines calculation; (4) lack of subject matter jurisdiction over the Hobbs Act robbery charge; and (5) Petitioner's sentence is procedurally and substantively unreasonable. The Fourth Circuit Court of Appeals ordered supplemental briefing on one issue: "[w]hether conspiracy to commit Hobbs Act robbery is a crime of violence under U.S. Sentencing Guidelines Manual § 4B1.2(a) (2016) for the purposes of career offender sentencing under USSG § 4B1.1(a)." United States v. Curry, 744 Fed. Appx. 784, 785 (4th Cir. 2018).

The Court affirmed in part and dismissed in part on August 8, 2018. Id. It enforced Petitioner's plea waiver, finding that the waiver was valid and that there was no evidence in the record to support Petitioner's argument that his plea was invalid due to ineffective assistance of counsel and that the Court substantially complied with Rule 11. Therefore, Petitioner waived all claims except for ineffective assistance of counsel and prosecutorial misconduct so the challenge to the career offender enhancement and challenges to the procedural and substantive reasonableness of his sentence were waived. Although the claims of ineffective assistance of counsel and prosecutorial misconduct were not waived, they did not entitle Petitioner to relief. The

Court concluded that the claims of ineffective assistance of counsel should be raised, if at all, in a § 2255 proceeding. It further found that the claims of prosecutorial misconduct, prosecutorial vindictiveness, and trial court error were not waived but were meritless. The United States Supreme Court denied certiorari on March 4, 2019. Curry v. United States, 139 S.Ct. 1302 (2019).

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on June 15, 2019. He argues (restated): (1) ineffective assistance of counsel rendered his guilty plea involuntary, effectively deprived him of counsel at a critical stage of the criminal case, deprived him of the right to present evidence in his defense, and denied him the right to appeal which he did not knowingly and voluntarily waive; (2) Petitioner is actually innocent of the sentencing enhancements under U.S. Sentencing Guidelines Sections 2B3.1(b)(2)(B), 4B1.1, and 4B1.2(a)(2); (3) the Government engaged in prosecutorial misconduct by breaching the plea agreement; (4) the Court abused its discretion by denying Petitioner's request for new counsel and by refusing to allow Petitioner to withdraw his guilty plea. Petitioner asks for resentencing. (Doc. No. 1 at 12). In his Motion to Amend and Supplement, Petitioner seeks to add a claim that he does not qualify as a career offender pursuant to United States v. Davis, 139 S.Ct. 2319 (2019).[6] (Doc. No. 5). Petitioner also seeks the appointment of counsel. (Doc. Nos. 4, 5).

The Government filed a Response, (Doc. No. 9), arguing that Petitioner's claims of ineffective assistance of counsel should be dismissed as conclusory and meritless, that his claims of prosecutorial misconduct, the denial of the right to counsel, error in the denial of his motion to appoint new counsel, and error in applying the firearm enhancement are procedurally barred and meritless, and that Petitioner cannot re-raise his challenges to the career offender enhancement or the denial of his motion to withdraw his guilty plea because he raised those issues on direct appeal.

---

[6] Davis holds that the residual clause contained in 18 U.S.C. § 924(c) is unconstitutionally vague.

Petitioner filed an "Objection" to the Government's Response, (Doc. No. 10), that is docketed as a Reply. He requests an evidentiary and the appointment of counsel and argues that: his North Carolina prior convictions are not qualifying "controlled substance offenses" for purposes of the career offender enhancement un Guidelines Section 4B1.2(b) or the firearm enhancement in Guidelines § 2K2.1, and that there was a material misunderstanding in the Plea Agreement with regards to the applicability of the six-level firearm enhancement pursuant to Guidelines § 2B3.1(b)(2)(B). He further argues that his plea was involuntary and that a change in the law warrants relief.

Petitioner filed a Motion to Amend, (Doc. No. 11), in which he yet again requests an evidentiary hearing and the appointment of counsel. He argues that his plea, including the appellate and post-conviction waiver, was not knowing and voluntary due to counsel's ineffective assistance and that the waiver does not encompass a claim about the constitutionality of his sentence that exceeds the statutory maximum and that is based on developments in the law (Davis and United States v. Simms, 914 F.3d 229 (4th Cir. 2019)[7]). He also argues that the Plea Agreement is ambiguous with regards to the six-level firearm enhancement, that any procedural default is due to the ineffective assistance of appellate counsel, that the Government breached the plea agreement by asking the Court to find that a conspiracy to commit Hobbs Act robbery is a crime of violence for purposes of the U.S. Sentencing Guidelines, and that Petitioner was denied the right to file objections to the terms of the Plea Agreement following the Rule 11 hearing through counsel's ineffectiveness and the Court's refusal to appoint him new counsel.[8] Petitioner has filed an affidavit in support of his claims. (Doc. No. 12).

---

[7] In Simms, the Fourth Circuit Court of Appeals held that Hobbs Act conspiracy does not categorically qualify as a crime of violence under § 924(c)'s force clause.

[8] Petitioner also notes that the Government's Response refers to a petitioner named "Kane," which is an apparent typographical error that has no bearing on the outcome in this case and will not be separately discussed.

## II.    PENDING MOTIONS

Petitioner has filed a Motion to Appoint Counsel, (Doc. No. 4), asking that the Court appoint him a lawyer to assist him with the § 2255 motion. <u>See</u> <u>also</u> (Doc. No. 5). There is no constitutional right to the appointment of counsel in a § 2255 proceeding. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987).  In § 2255 actions, appointment of counsel is governed by the Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing.  The Court may also appoint counsel to a financially eligible habeas petitioner if justice so requires.  <u>See</u> 18 U.S.C. § 3006A(a)(2)(B). Petitioner has failed to demonstrate that the appointment of counsel is warranted and his Motion will be denied.

In his Motion to Amend and Supplement, (Doc. No. 5), Petitioner seeks to add a new claim based on <u>Davis</u>. The Motion will be granted insofar as the Court will address Petitioner's <u>Davis</u> claim.

In his Motion to Amend, (Doc. No. 11), Petitioner presents additional argument in support of his Reply. The Motion will be granted insofar as the Court will address Petitioner's additional argument.

## III.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### IV.    DISCUSSION

**(1)    Waiver**

The Government argues that Petitioner's knowing and voluntary guilty plea, and the express post-conviction waiver contained in the Plea Agreement, waived all claims except for those of ineffective assistance of counsel and prosecutorial misconduct.

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit

does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. <u>See</u> <u>United States v. Lemaster</u>, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." <u>United States v. Johnson</u>, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." <u>Marin</u>, 961 F.2d at 496 (emphasis added).

The Court conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including the appellate and post-conviction waivers. Petitioner's self-serving and unsupported contentions to the contrary are rejected. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); <u>see</u>, <u>e.g.</u>, <u>Lemaster</u>, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Petitioner's knowing and voluntary plea waived all non-jurisdictional defects. No error, such as sentencing beyond the statutory maximum, occurred that would warrant setting aside the waiver. <u>See</u> Section (3), *infra*. Petitioner's substantive claims are therefore waived.

**(2)** **Procedural Default**

The Government argues that Petitioner's claims of prosecutorial misconduct, that he was denied the right to counsel, and that the Court abused its discretion in denying his motion to appoint new counsel are procedurally defaulted from § 2255 review.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). With regards to cause and prejudice, a petitioner must demonstrate: (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

The Supreme Court has held that the novelty of a constitutional claim would operate as the functional equivalent of "cause" that excuses a defendant's failure to raise the issue directly. Reed

v. Ross, 468 U.S. 1 (1984). This exception exists "where a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel." Reed, 468 U.S. at 16. The three specific situations in which this exception applies are: (1) when a decision of the Supreme Court may explicitly overrule one of its precedents; (2) when a decision overturns a longstanding and widespread practice to which the Supreme Court has not spoken; and (3) when a decision disapproves a practice that the Supreme Court has arguably sanctioned in prior cases. Reed, 468 U.S. at 17. Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494).

Assuming *arguendo* that Petitioner has established cause to excuse the procedural default of his claims of prosecutorial misconduct, the right to be represented by counsel, and sentencing error, he is unable to demonstrate prejudice because his claims are meritless. See Section (3), *infra*. Therefore, these claims are procedurally defaulted from § 2255 review.

**(3)     Merits**

### (i) Ineffective Assistance of Counsel

Petitioner contends that ineffective assistance of counsel rendered his guilty plea involuntary, effectively deprived him of counsel at a critical stage of the criminal case, deprived him of the right to present evidence in his defense, and denied him the right to appeal which he did not knowingly and voluntarily waive.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland, 466 U.S. at

687-88. The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong in this situation, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Petitioner's claims that he did not understand the proceedings or the charges and did not knowingly and voluntarily waive his rights are conclusively refuted by the record. See Section (1), *supra*. Moreover, Petitioner seeks only sentencing relief. He does not allege that he would not have pled guilty absent counsel's alleged misadvice and has thus failed to satisfy Strickland's prejudice prong by demonstrating a reasonable probability that he would not have pled guilty absent counsel's alleged misadvice. See Hill, 474 U.S. at 59. Any such claim at this juncture would be contradicted by the statements he made when pleading guilty, *inter alia*, that he is in fact guilty of the offense to which he pled guilty. Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22. Petitioner's claims of ineffective assistance of counsel are therefore meritless and would be denied even if they were not procedurally defaulted.

**(a) Sentencing Calculations**

Petitioner contends that the Court misapplied the U.S. Sentencing Guidelines by adding sentencing enhancements as a career offender and because a firearm was otherwise used in the offense. Petitioner claims that he is actually innocent of these enhancements and that his sentence should be recalculated without them.

Barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines. See United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). Merely alleging a miscalculation of the guidelines does not give rise to a constitutional issue and therefore is not cognizable in the context of a § 2255 motion to vacate. Pregent, 190 F.3d at 284.

The instant allegations about misapplication of the Sentencing Guidelines are meritless and fail to establish any constitutional error and, therefore, are not cognizable in this § 2255 proceeding.

Petitioner argues that the Court erred in applying the career offender guidelines in §§ 4B1.1 and 4B1.2(a)(2) because the underlying offense of conspiracy to commit Hobbs Act robbery is not a crime of violence to which the career offender enhancement attaches. In Johnson v. United States, 135 S.Ct. 2551 (2015), the United States Supreme Court announced that the Armed Career Criminal Act's ("ACCA") residual clause[9] is void for vagueness, which is a retroactively

---

[9] ACCA defines a "violent felony" as any felony that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of

applicable right. Id.; Welch v. United States, 136 S.Ct. 1257, 1265 (2016). The Court found similarly in United States v. Davis, 139 S.Ct. 2319 (2019), that residual clause contained in 18 U.S.C. § 924(c) is unconstitutionally vague.

Petitioner argues that the Guidelines' definition of a "crime of violence" for purposes of the career offender enhancement is likewise unconstitutionally vague. Petitioner's argument is squarely foreclosed because the United States Supreme Court has held that "the Guidelines are not amenable to a vagueness challenge." Beckles v. United States, 137 S.Ct. 886, 894 (2017). Moreover, the 2016 Guidelines upon which the Court relied omit the so-called residual clause and define a "crime of violence" as a felony that:

(1) Has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) Is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (2016).

Petitioner's argument that the underlying offense of conspiracy to commit Hobbs Act robbery does not satisfy the force clause in § 4B1.2(a)(1) is also incorrect. Petitioner relies on United States v. Simms, 914 F.3d 229 (4th Cir. 2019), in which the Fourth Circuit held that Hobbs Act conspiracy does not categorically qualify as a crime of violence under § 924(c)'s force clause. However, Simms does not apply to the advisory sentencing guidelines. See generally Beckles, 137 S.Ct. at 894. Further, Hobbs Act robbery is a crime of violence,[10] and the relevant application note specifies that a "crime of violence" includes "the offenses of aiding and abetting, conspiring, and

---

explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another."* 18 U.S.C.A. § 924(e)(2)(B) (emphasis added). The italicized portion of the definition is referred to as the residual clause.

[10] The Fourth Circuit held in United States v. Mathis, 932 F.3d 242, 266-67 (4th Cir. 2019), that Hobbs Act robbery is a crime of violence under § 924(c)'s force clause.

attempting to commit such offenses." U.S.S.G. § 4B1.2 Application Note 1 (2016). Petitioner's Hobbs Act conspiracy offense therefore supports enhanced sentencing as a career offender.

Petitioner argues that he "does not have the two requisite prior convictions as required by § 4B1.1, which [his]sentencing attorney failed to challenge," and that the categorical approach should be used to determine if his priors qualify as crimes of violence. (Doc. No. 1-1 at 9). Petitioner's suggestion that his prior convictions are not crimes of violence is meritless. The PSR relies on seven prior controlled substance offenses to support Petitioner's career offender enhancement, so the crime of violence analysis is inapplicable. (3:16-cr-74, Doc. No. 175 at ¶ 22). A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, export, distribution, or dispensing of a controlled substance … or the possession of a controlled substance … with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). The PSR lists seven prior drug felony convictions involving the possession of a controlled substance with intent to manufacture, distribute, or dispense. Petitioner easily satisfies the requirement of two prior convictions for a controlled substance offense. See (3:16-cr-74, Doc. No. 175 at ¶ 22) (possession with intent to sell and deliver cocaine (05CRS52388), manufacture cocaine (05CRS8672), possess with intent to sell and distribute cocaine (10CRS50193)). An analysis under the categorical approach is inapplicable.

Petitioner argues that the six-level enhancement for a firearm that was "otherwise used" under § 2B3.1(b)(2)(B) was erroneously applied to him. This claim is conclusively refuted by the record. Petitioner expressly agreed as part of his knowing and voluntary Plea Agreement that he "should receive a six (6)-level enhancement to his offense level pursuant to U.S.S.G. § 2B3.1(b)(2)(B)." (3:16-cr-74, Doc. No. 125 at 2). The enhancement is supported by the Factual

Basis that Petitioner agreed was accurate, in which Petitioner's co-defendant pointed a handgun at the Kay Jeweler's assistant manager, during the robbery. (3:16-cr-74, Doc. No. 126 at 2); (Id., Doc. No. 200 at 10). Petitioner's present attempt to disavow the firearm enhancement is contrary to his knowing and voluntary guilty plea and the supporting Factual Basis and will be rejected. See generally Blackledge 431 U.S. at 74.

Petitioner's sentencing calculation claims are meritless and, even if they were not waived by the Plea Agreement and procedurally defaulted, they would be denied on the merits.

**(b) Prosecutorial Misconduct**

Petitioner contends that the Government engaged in misconduct by advocating for the Probation Officer's application of sentencing enhancements that breached the Plea Agreement. Petitioner's breach argument relies on the portion of the Rule 11 transcript that states: "The parties agree that Mr. Curry should not receive an increase or decrease to his offense level under the guidelines." (Id., Doc. No. 200 at 8). Petitioner's claim that the Government breached the plea agreement by seeking sentencing enhancements is conclusively refuted by the record.

The Plea Agreement acknowledges that a career offender enhancement will be applied if Petitioner is found to qualify as such, that a six-level firearm enhancement will apply, that there will be no increase or decrease for aggravating or mitigating role pursuant to Guidelines §§ 3B1.1 and 3B1.2, and that either party may seek a departure or variance. (Id., Doc. No. 125 at 2). The passage upon which Petitioner presently relies, that Petitioner should not receive an increase or decrease to his offense level, refers Guidelines §§ 3B1.1 and 3B1.2 for aggravating or mitigating role. (Id., Doc. No. 126 at 2). The Government did not breach the Plea Agreement by advocating for career offender and firearm enhancements which are both expressly included in the Plea Agreement. The Government did not request a role enhancement and none was included in the

PSR. The Government abided by the Plea Agreement by asking the Court to impose a sentence within the advisory guideline range of 216 months' imprisonment. (Id., Doc. No. 293 at 65-68). There is no support in the record for Petitioner's breach argument and, even if it was not procedurally defaulted, it would be denied on the merits.

### (c) Trial Court Error

Finally, Petitioner contends that the Court erred by denying his Motions seeking the appointment of new counsel and the withdrawal of his guilty plea. Petitioner's claims are conclusively refuted by the record.

First, Petitioner complains that "Magistrate Judge Keesler denied movant's request for appointment of new counsel, regarding a conflict of interest between attorney and defendant, forcing defendant to proceed with ineffective counsel or proceed *pro se*." (Doc. No. 1 at 8).

Petitioner appears to refer to the bond review hearing came before Judge Keesler on July 14, 2016. At that time, Petitioner complained that he never got a preliminary hearing, that he asked Ms. Okwara to do investigations that were never done, that he never received discovery, and that he was now coming up against a plea deadline, that he wanted to file a Brady[11] motion, that Ms. Okwara emailed the Government admitting Petitioner is guilty when Petitioner made no such admission, and that the plea conditions include a career offender enhancement that petitioner did not think was fair. Judge Keesler found that circumstances did not change sufficiently to allow pre-trial release and denied Petitioner's motion for bond. Judge Keesler encouraged Petitioner and Ms. Okwara to sit down and talk about the issues that Petitioner had raised, discuss Petitioner's options, and see how they wanted to go forward. Petitioner signed the Plea Agreement on August

---

[11] Brady v. Maryland, 373 U.S. 83 (1963).

1, 2016, and stated at the Rule 11 hearing on August 4, 2016, that he was satisfied with counsel's services. (3:16-cr-74, Doc. No. 200 at 12-13).

There was no motion seeking the appointment of a new lawyer before Judge Keesler at any time in the criminal proceedings. Although Petitioner expressed dissatisfaction at the bond review hearing, Petitioner did not request a new lawyer. Judge Keesler instructed Petitioner and Ms. Okwara to discuss the issues Petitioner raised, which evidently occurred, as Petitioner stated at the Rule 11 hearing that he was satisfied with counsel's services. Further, contrary to his allegations, the record reveals that Petitioner was not forced to proceed *pro se* at any time during the criminal proceedings.[12]

To the extent that Petitioner is attempting to challenge the denial of one of his other requests for the appointment of new counsel, such a claim is meritless. Petitioner was granted counsel at his initial appearance and Ms. Okwara was appointed to represent him on May 24, 2016. Ms. Okwara filed a Motion for Inquiry of Counsel on August 26, 2016 after Petitioner refused to meet with her about completing the forms for his PSR interview. (Id., Doc. No. 145). A hearing on the matter came before Magistrate Judge Cayer on September 7, 2016, and Petitioner's oral motion to appoint new counsel was granted. Randolph Marshall Lee was appointed to represent Petitioner on September 8, 2016. Petitioner filed a *pro se* Motion seeking new counsel that was docketed on September 12, 2016, (Id., Doc. No. 158), that was denied as moot on September 14, 2016, because Ms. Okwara had already been allowed to withdraw from the case. Mr. Lee filed a Motion to Withdraw on November 9, 2016, (Id., Doc. No. 179), because Petitioner sought to withdraw his plea based on allegations of prior counsel's ineffectiveness. Judge Cayer granted the motion and appointed Roderick Morris Wright, Jr. to represent Petitioner on November 15, 2016. On March

---

[12] Petitioner did make a number of *pro se* filings but he fails to identify any period during the criminal prosecution when he was without the representation of counsel.

27, 2017, Mr. Wright filed a Motion for Inquiry into Counsel, (Id., Doc. No. 220), that was prompted by Petitioner's filing of a *pro se* document, (Id., Doc. No. 219), expressing dissatisfaction with counsel. The Court denied the *pro se* Letter/Motion on April 5, 2017 because Petitioner's allegations concerning the efforts of counsel were insufficient to appoint a fourth attorney to represent him. (Id., Doc. No. 221). A hearing on Mr. Wright's Motion for Inquiry came before Judge Cayer on April 10, 2017, at which time the request for new counsel was denied. Judge Cayer found that Petitioner failed to establish good cause for the Court to appoint new counsel, Petitioner was not seeking to proceed *pro se*, and that Mr. Wright should remain as appointed counsel. (Id., Doc. No. 222). Petitioner filed a *pro se* Letter, (Id., Doc. No. 258), expressing dissatisfaction with counsel that prompted Mr. Wright to file a second Motion for Inquiry of Counsel on July 25, 2017, (Id., Doc. No. 259). Judge Cayer denied the motion at a hearing on August 7, 2017 after determining that Petitioner was not seeking to represent himself. (Id., Doc. No. 260). The Court denied Petitioner's *pro se* Letter to the extent that it requested relief because he failed to show good cause for replacing counsel and was not seeking to proceed *pro se*. (Id., Doc. No. 261). Petitioner has failed to demonstrate that good cause existed for replacing counsel on any occasion when he requested such relief from the Court and the record does not support such an argument. Therefore, even if Petitioner meant to challenge the denial of one of these requests for the appointment of new counsel, such a claim is meritless.

Second, Petitioner complains that "sentencing Judge Max O. Cogburn failed to allow movant to withdraw and object to his plea for fair and just reasons, forcing movant to proceed with the disputed factual basis, and the ambiguous terms in the plea agreement after several attempts to withdraw and object to plea agreement." (Doc. No. 1 at 8).

Counsel filed a Motion to Withdraw on Petitioner's behalf arguing that the six-factor test set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), favors withdrawal of the plea. (3:16-cr-74, Doc. No. 209). The Court considered the six non-exclusive factors, found that two factors favored withdrawal and four factors mitigated against withdrawal, and denied the Motion. (Id., Doc. No. 217). The Fourth Circuit affirmed on direct appeal, finding that "Curry has not met his burden [of demonstrating that withdrawal should be granted] and the district court did not abuse its discretion in denying Curry's motion to withdraw his guilty plea." Curry, 744 Fed. Appx. at 787.

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]"). The Fourth Circuit already denied Petitioner's claim that the Court erred by denying his motion to withdraw and he has cited no changed circumstances that would warrant relitigating the issue. Therefore, this claim will be denied.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's Motions to Amend insofar as his arguments have been considered, deny Petitioner's § 2255 Motion to Vacate, and deny his Motion to Appoint Counsel.

**IT IS, THEREFORE, ORDERED that:**

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2. Petitioner Motion to Appoint Counsel, (Doc. No. 4), is **DENIED**.

3. Petitioner's Motions to Amend, (Doc. No. 5, 11), are **GRANTED** as stated in this Order.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: December 12, 2019

Max O. Cogburn Jr.
United States District Judge