**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**DOCKET NO. 3:16-CR-00074-MOC-DSC**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| **JERITON LAVAR CURRY,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Compassionate Release, brought pursuant to 18 U.S.C. § 3582(c)(1)(A). See Doc. No. 324. For reasons discussed below, Defendant's motion is denied at this time.

**I.    BACKGROUND**

On August 4, 2016, Defendant pleaded guilty to one count of Conspiring to Commit Hobbs Act Robbery, violating 18 U.S.C. § 1951. Doc. Nos. 1, 128. The United States Probation Office prepared a presentence investigation report to assist the Court with sentencing. See Doc. No. 175. As relevant here, the Court adopted the report in imposing its sentence. See Doc. No. 269.

The report carefully documented the nature and the circumstances of the offenses leading to Defendant's guilty plea. On December 19, 2015, at approximately 11:40 p.m., the assistant manager of a jewelry store in Gastonia left that store alone to make the nightly deposit at a local bank. See Doc. No. 175 at 4. Ordinarily, for safety, the assistant manager would have been followed by another employee—Defendant's girlfriend. See id. at 5. But, on the night in question, Defendant's girlfriend called her assistant manager and indicated that her car was running hot and that she would not be able to follow him to make the deposit as usual. See id. at 4. The assistant store manager was robbed at gunpoint while he attempted to deposit funds at the local bank. See

id. at 4.  The robber escaped with about $4,000 in cash belonging to the jewelry store.  See id.

Officers would subsequently learn that co-defendant Reginald Tate was responsible for the robbery.  Tate would later admit he received a phone call from Defendant on the night in question, providing him with specific directions as to when and where to be to rob the assistant manager.  See id. at 5.  Defendant learned this information firsthand, as he would normally pick up his girlfriend after she finished her work at the jewelry store.  Together, they would follow the assistant store manager for the nightly bank deposit.  See id.  Before the night in question, Defendant regularly inquired as to how busy the store was and how much cash was contained in the nightly deposit.  See id.  On the night of the robbery, Defendant picked up his girlfriend as usual, but instructed her to tell the assistant manager that their car was running hot.  See id.  Several days later, Defendant gave his girlfriend about $1,000 in cash to count, telling her it was their share of the robbery.  See id.  Defendant's girlfriend returned the money.  See id.

In the report, the Probation Office also recounted Defendant's extensive criminal history.  Among other things, Defendant was previously convicted of: breaking and entering; attempted second degree kidnaping involving a 13-year-old minor; selling cocaine; selling Schedule II controlled substances; possessing with intent to sell and distribute cocaine; and assault on a child under 12.  See id. at 7–13.  Based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 32, Criminal History Category was VI, and his Guidelines imprisonment range was 210 to 240 months.  Doc. No. 269.  Still, the Court varied below the Guidelines, finding Defendant had substantial family ties.  See id. at 3.  On August 24, 2017, the Court imposed a total sentence of 151 months.  See Doc. No. 268.

On June 18, 2020, Defendant filed the instant motion, seeking compassionate release from prison based on the COVID-19 pandemic.  See Doc. No. 324.  In support, he maintains that his

health conditions—diabetes with neuropathy in his legs and feet, hypertension, high blood pressure, and morbid obesity—render him especially vulnerable to COVID-19. See id. at 2. Defendant alleges he is especially concerned because prison facilities are uniquely susceptible to an outbreak of COVID-19. Id. He also maintains that the sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction. See id.

The Government responded, asserting that Defendant should not receive compassionate release for two reasons. First, Defendant failed to offer "extraordinary and compelling reasons" warranting a sentence reduction under 18 U.S.C. § 3582(c). Doc. No. 327 at 10–14. Specifically, (1) the Bureau has taken several measures to mitigate the risk of COVID-19 transmission in prison facilities; (2) Defendant has not established that he would be less vulnerable to COVID-19 if he were released; and (3) Defendant's medical ailments would be well-controlled if he were willing to comply the self-care prescribed by the Bureau's medical staff. See id.

Second, assuming these facts could present an "extraordinary and compelling reason" warranting a sentence reduction, the Government next asserts that Defendant poses a significant danger to the safety of the community and that the § 3553(a) factors militate against such compassionate release. See id. at 14–17. In particular, Defendant's criminal history is filled with serious and violent criminal offenses; he has not yet served even half of his sentence; and he has had several disciplinary infractions while imprisoned for disruptive conduct. See id. Thus, release now would create unwarranted sentencing disparities, would fail to serve the need for specific and general deterrence, and would fail to reflect the seriousness of the offense.

## II. ANALYSIS

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." As relevant here, the applicable policy statement provides that the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that" (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; see United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

Here, the Court has considered the state of the COVID-19 pandemic—both generally and within Defendant's place of imprisonment—Defendant's criminal history, his disciplinary record while imprisoned, and his age and medical conditions. On balance, the weight of this evidence and the § 3553(a) factors counsel against release at this time. As explained by the Government—and as expressly adopted here—Defendant failed to present an "extraordinary and compelling reasons" warranting a reduction. See Doc. No. 327 at 10–14. And, even assuming Defendant did present such a reason, the danger that Defendant poses to the community and the § 3553(a) factors weigh against release. See id. at 14–17. Thus, the Court declines to order compassionate release.[1]

---

[1] Defendant also asks the Court to Order the Bureau to place him on home confinement. Even if the Court could grant this relief, the Court declines to do so for reasons stated above.

4

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release, Doc. No. 324, is **DENIED**.

Signed: July 22, 2020

Max O. Cogburn Jr.
United States District Judge