# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cr-74-MOC-DSC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **vs.** ) | |
| ) | **ORDER** |
| **JERITON LAVAR CURRY,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 344). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. The Government has responded in opposition to the motion.

## I.  BACKGROUND

On August 4, 2016, Defendant pleaded guilty in this Court to one count of Conspiring to Commit Hobbs Act Robbery, violating 18 U.S.C. § 1951. (Doc. Nos. 1, 128). The United States Probation Office prepared a presentence investigation report to assist the Court with sentencing. (Doc. No. 175). As relevant here, the Court adopted the report in imposing its sentencing. (Doc. No. 269).

The report documented the nature and circumstances of the offense leading to Defendant's guilty plea. On December 19, 2015, at around 11:40 p.m., the assistant manager of a jewelry store in Gastonia left the store alone to make the nightly deposit at a local bank. (Doc. No. 175 at 4). Ordinarily, for safety, the assistant manager would have been followed by another employee—Defendant's girlfriend. (Id. at 5). On the night in question, however, Defendant's

-1-

girlfriend called her assistant manager and indicated that her car was running hot and stated that she would not be able to follow him to make the deposit as usual. (Id. at 4). The assistant store manager was robbed at gunpoint while he attempted to deposit the funds at the local bank. (Id. at 4). The robber escaped with about $4,000 in cash belonging to the jewelry store. (Id.).

Officers would subsequently learn that co-defendant Reginald Tate was responsible for the robbery. Tate would later admit he received a phone call from Defendant on the night in question, providing him with specific directions as to when and where to rob the assistant manager. (Id. at 5). Defendant learned this information firsthand, as he would normally pick up his girlfriend after she finished her work at the jewelry store. Together, they would follow the assistant store manager for the nightly bank deposit. (Id.).

Before the night in question, Defendant regularly inquired as to how busy the store was and how much case was contained in the nightly deposit. (Id.). On the night of the robbery, Defendant picked up his girlfriend as usual, but instructed her to tell the assistant manager that their car was running hot. (Id.). Several days later, Defendant gave his girlfriend about $1,000 in cash to count, telling her it was their share of the robbery. (Id.). Defendant's girlfriend returned the money. (Id.).

In the report, the Probation Office also recounted Defendant's extensive criminal history. Among other things, Defendant was previously convicted of: breaking and entering; attempted second-degree kidnapping involving a 13-year-old minor; selling cocaine; selling Schedule II controlled substances; possessing with intent to sell and distribute cocaine; and assault on a child under 12. (Id. at 7–13). Based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 32, Criminal History

Category was VI, and his Guidelines imprisonment range was 210 to 420 months. (Doc. No. 269). The Court varied below the Guidelines, finding Defendant had substantial family ties. (Id. at 3). On August 24, 2017, the Court imposed a total sentence of 151 months. (Doc. No. 268). Defendant has served about half of his sentence, and he is scheduled to be released on March 12, 2027.

On June 18, 2020, Defendant moved for a sentence reduction based on the threat posed by the COVID-19 pandemic. (Doc. No. 324). In support, Defendant maintained that his health conditions—diabetes with neuropathy in his legs and feet, hypertension, high blood pressure, and morbid obesity—rendered him especially vulnerable to COVID-19. (Id. at 2). The Government filed a response in opposition. (Doc. No. 327). On July 22, 2020, the Court denied Defendant's motion for a sentence reduction. (Doc. No. 332).

On January 14, 2021, Defendant filed the instant motion, renewing the same arguments as the first motion. (Doc. No. 344). In the pending motion, Defendant cites the same medical conditions as in his first motion. (Id.). The only additional ground offered by Defendant for release is that, as of January 8, 2021, Defendant had tested positive for COVID-19. (Id.). He does not allege any detectable symptoms from the virus. (Id.).

**II.      DISCUSSION**

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to

-3-

establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these

circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

According to Defendant's BOP medical records, Defendant appears to receive medical treatment for type 2 diabetes mellitus, hypertension, and severe obesity. Thus, he appears to be suffering from serious conditions that do make him susceptible to serious complications from contracting COVID-19.[2] Furthermore, as noted, since filing his first motion, Defendant tested positive for COVID-19 on January 8, 2021, but he does not allege any COVID-19 symptoms.

Defendant's request for a sentence reduction will be denied, despite his medical conditions, because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Defendant was convicted of Hobbs Act Robbery Conspiracy for his involvement in a violent armed robbery during which a firearm was brandished. In addition, Defendant has a significant criminal history as detailed above. Defendant was sentenced to 151 months imprisonment and has over 50% of his sentence left. To allow Defendant to be released now, having served only about half of his sentence, would not take into account the violent and serious nature of his crime.[3] Additionally, Defendant's early

---

[2] The Government's response to Defendant's first motion detailed how the Defendant's medical conditions were found by BOP to be treatable and that Defendant has refused to manage his conditions himself, despite being able to do so. (Doc. No. 327 at 12–13). Defendant's updated BOP medical records confirm that he continues to decline medical care from BOP to treat his conditions and continues to refuse to manage his own medical issues through self-care.

[3] Furthermore, as the Government notes, Defendant has recently received serious disciplinary

-6-

release would fail to provide just punishment and would result in an unwarranted sentencing disparity compared to similarly situated defendants.

Next, to the extent that Defendant seeks to be released to home confinement, this Court has no authority to direct BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion. See 18 U.S.C. § 3621(b); United States v. Voda, 994 F.2d 149, 151–52 (5th Cir. 1993).

Finally, this Court notes that, in light of the Fourth Circuit's decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). In other words, the Court is not constrained by the policy statement in Section 1B1.13 in determining what qualifies as an "extraordinary and compelling reason" warranting a sentence reduction. Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A).

In sum, in light of Defendant's record and the totality of relevant circumstances, this Court denies the motion for a sentence reduction. Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 344), is **DENIED**.

---

infractions in BOP custody including for possession of drugs and disruptive conduct. Indeed, on December 11, 2020, following his submission of the first motion and while battling his medical conditions, Defendant received a disciplinary infraction for possessing drugs or alcohol.

-7-

Case 3:16-cr-00074-MOC-DSC   Document 349   Filed 03/02/21   Page 7 of 8

Signed: March 2, 2021

*Max O. Cogburn Jr.*
United States District Judge